UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MIREK RAMIREZ, et al.,

                Plaintiffs,                   **FINDINGS OF FACT AND**
- v -                                             **CONCLUSIONS OF LAW**

H.J.S. CAR WASH INC., et al.,                     CV-11-2664 (VVP)

                Defendants.
-------------------------------------------------------------x

       On the basis of the testimony and other evidence submitted at the trial of this action on October 16, 2012, the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

       1.       Since at least March of 2004, a car wash business known as the Off Broadway Car Wash (hereinafter "Off Broadway") has been in operation at 42-08 80th Street in Elmhurst, New York.

       2.       Prior to June 23, 2008, Off Broadway was owned by Sunshine Broadway, Inc. As evidenced by a Bill of Sale dated June 23, 2008, all of the assets of Off Broadway were sold to J P Elmhurst, Inc. On the same day, by means of a Bargain and Sale Deed, J P Elmhurst, Inc. also acquired the real property on which Off Broadway was located from an entity named High Up Property, Inc.

       3.       The two shareholders of J P Elmhurst, Inc. are the defendant Julie Chou and Peter Wang, each of whom own 50% of that corporation.

       4.       Prior to July 1, 2008, Off Broadway was operated by a Mr. Lee. As of July 1, 2008, the defendant Julie Chou began operating Off Broadway and continued to operate the business through the date of the trial. Since July 2008, Chou has worked at Off Broadway on

a daily basis, arriving at around 7:00 a.m. and leaving between 8:00 and 9:00 p.m. Chou is responsible for a substantial portion of the financial affairs of Off Broadway. She handles the money for the business. She maintains the bank account for the business, for which she has signature authority and writes checks, and her home address is the address of the bank account. She purchases materials and supplies, arranges for repairs, and pays the bills.

5. From at least 2001, Ismael Sinani has been employed at Off Broadway, and since at least 2004 he has held a supervisory role at the business. Prior to July 1, 2008, he took his instructions concerning work from Mr. Lee. From July 1, 2008 to the present he takes his instructions only from Chou whom he considers to be his boss.

6. The plaintiff Mirek Ramirez was employed by Off Broadway from June 20, 2006 until April 18, 2011. He worked six days per week throughout that period of time, and his schedule never changed. On Tuesdays and Wednesdays, he worked from 7:00 a.m. to 6:00 p.m.; on Thursdays, Fridays, and Saturdays, he worked from 7:00 a.m. to 8:00 p.m.; and on Sundays, he worked from 8:00 a.m. to 5:00 p.m. He was paid an hourly wage of $4.00 per hour from June 2006 to March 2010, received $4.50 per hour from March 2010 to December 2010, and received $5.00 per hour from December 2010 until he left in April 2011. He received the same rate of pay regardless of how many hours he worked per week, and did not receive an extra hour of pay if he worked more than 10 hours on a given day.

7. The plaintiff Sergio Cordero was employed by Off Broadway from March 2004 to February 2010. He worked seven days per week and his schedule never changed. He worked from 7:00 a.m. to 10:00 p.m. on Mondays through Saturdays, and from 8:00 a.m.

to 5:00 p.m. on Sundays.  His wage was $3.50 per hour from 2004 to 2006, and $3.75 per hour from 2006 until he left in February 2010.  He received the same rate of pay regardless of how many hours he worked per week, and did not receive an extra hour of pay if he worked more than 10 hours on a given day.

8. The plaintiff Hilarino Mejia was employed by Off Broadway from January 1, 2010 to April 18, 2011.  He worked six days per week, with Wednesdays being his day off.  Initially, he worked from 7:00 a.m. to 7:00 p.m. and was paid $4.00 per hour.  In March 2010, both his schedule and his rate of pay changed such that he worked from 8:00 a.m. to 8:00 p.m. and was paid $4.50 per hour.  He continued to work six days a week on that schedule until he left in April 2011.  He received the same rate of pay regardless of how many hours he worked per week, and did not receive an extra hour of pay if he worked more than 10 hours on a given day.

9. The plaintiffs also received distributions from a tip box that was maintained at Off Broadway.  The tips were counted by Sinani at the end of the day and he distributed between $10 and $15 to each of the plaintiffs.  He retained a portion of the proceeds of the tip box ostensibly to pay for towels and jackets used by the plaintiffs in their work.  No record was kept of the amounts of tips that were paid, and there was no understanding that the tips were considered part of the wages earned by the plaintiffs.

10. All three of the plaintiffs were hired by Ismael Sinani, and he was their supervisor.  Because they spoke very little English, the plaintiffs received their instructions concerning the tasks they were to perform primarily from Sinani who speaks Spanish,

although occasionally they received instructions directly from Chou once she began operating Off Broadway in July 2008.  For example, at times she would instruct them to clean the equipment and the premises when business was slow.  Because of language differences, however, Chou used Sinani as her vehicle for communicating instructions to the plaintiffs concerning their tasks.  Nevertheless, it was clear to the plaintiffs that the instructions they received from Sinani often came directly from Chou, either because the instructions were communicated to the plaintiffs immediately after Sinani emerged from Chou's office or because Sinani said so.

11. The plaintiffs' hours at work were recorded by means of time cards which where punched in and punched out at a time clock operated both by Chou and Sinani.  They were paid their wages weekly in cash by Chou.  On payday, Chou reviewed the time cards for the plaintiffs to calculate the hours they worked, but then tore up the time cards and disposed of them after she paid them their wages.

12. The cost of a car wash at Off Broadway ranged from approximately $10 to approximately $40, and the most common charge was $20.  Typically, from Mondays through Wednesdays approximately 250 cars would be washed per day.  On Thursdays and Fridays, between 250 to 300 cars would be washed per day, and on Saturdays and Sundays the numbers were closer to 350 cars per day.  Thus, in an average week, approximately 2,000 cars would be washed.  At an average price of $20 per wash, the business obtained gross receipts of approximately $40,000 per week, or in excess of $2 million per year.

13. In the course of its business, Off Broadway purchased chemicals used to wash the cars as well as towels to dry them, and used and maintained machinery, all of which were items that either moved in or were produced for interstate commerce.

14. The plaintiffs filed this action on June 2, 2011 asserting claims for unpaid minimum and overtime wages under the Fair Labor Standards Act of 1938 (the "FLSA"), 29 U.S.C. §§ 201-219, and under various provisions of New York law including the New York Labor Law (the "NYLL").

## CONCLUSIONS OF LAW

1. The court has subject matter jurisdiction of this action pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1337 and 28 U.S.C. § 1331. The claims arising under New York law are so related to the FLSA claims that they form part of the same case or controversy, and are therefore within the supplemental jurisdiction of the court pursuant to 28 U.S.C. § 1367.

2. Off Broadway constitutes an enterprise engaged in commerce or in the production of goods in commerce within the meaning of the FLSA because its employees handle and work on goods and materials that have been moved in and produced for commerce, and because Off Broadway enjoys annual gross sales well in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A). Accordingly, it is subject to the minimum and overtime wage requirements of the FLSA. *See* 29 U.S.C. §§ 206, 207.

3. Both the FLSA and the NYLL define the term "employer" broadly for purposes of determining those who bear liability for unpaid wages. *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *9 (E.D.N.Y. Mar. 26, 2010); *Chan v. Sung Yue*

*Tung Corp.*, No. 03 Civ. 6048, 2007 WL 313483, at *12 (S.D.N.Y. Feb. 1, 2007); *see* 29 U.S.C. § 203(d) (defining "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee"); N.Y. Lab. Law §§ 2(6), 651(6), 190(3); *see also Falk v. Brennan*, 414 U .S. 190, 195 (1973) (emphasizing "expansiveness" of the definition of employer under the FLSA). In making a determination whether someone is an "employer" under the FLSA, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Svcs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The factors to be considered include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).

    4.    Based on the above factors, the court concludes that Chou was the plaintiffs' employer within the meaning of the FLSA and the NYLL. In view of her position as one-half owner of Off Broadway and her daily, personal control of all aspects of the operations of Off Broadway, Chou possessed the power to control the work of the plaintiffs. She gave them instructions on what to do both directly, and indirectly through their supervisor Sinani. She maintained the records of their hours and distributed their pay. Although Sinani had authority to determine the plaintiffs' hours of work, he clearly answered to Chou and she therefore had the power to control that aspect of the plaintiffs' employment as well. Thus, once Chou assumed operational control of Off Broadway on July 1, 2008, the economic

reality of the workplace at Off Broadway is that Chou became the plaintiffs' employer and was therefore subject to the minimum and overtime wage requirements of the FLSA and the NYLL.

5.  From September 1, 1997 to July 24, 2007, the minimum wage required to be paid to workers under federal law was $5.15 per hour. Minimum Wage Increase Act of 1996, Pub. L. No. 104-188, § 2104(b), 110 Stat. 1755 (amending 29 U.S.C. § 206(a)). The minimum wage required to be paid to workers under federal law was raised to $5.85 per hour from July 24, 2007 to July 24, 2008, raised again to $6.55 per hour from July 24, 2008 to July 24, 2009, and has been $7.25 per hour since July 24, 2009. 29 U.S.C. § 206(a). Under New York law, the minimum wage required to be paid to employees such as the plaintiffs was $5.15 per hour from March 31, 2000 to January 1, 2005; $6.00 per hour from January 1, 2005 to January 1, 2006; $6.75 per hour from January 1, 2006 to January 1, 2007; $7.15 per hour from January 1, 2007 to July 24, 2009; and $7.25 per hour since July 24, 2009. N.Y. Labor Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a) (2013).

6.  Under both federal and New York state law, an employee must be paid at the rate of one and one-half times the employee's regular hourly rate for each hour the employee works in excess of 40 hours in a given workweek. 29 U.S.C. § 207(2)(C); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2013). In addition, separate from any other regular or overtime wages, when an employee works more than 10 hours on any given day, the employee is entitled to receive an additional one-hour's pay at the applicable minimum wage rate. N.Y.

Comp. Codes R. & Regs. tit. 12, § 142-2.4(a). This wage entitlement is commonly referred to as "spread of hours."

7. Chou failed to pay the plaintiffs the minimum and overtime wages required by the above provisions of the FLSA and the laws of New York, and also failed to pay the addition "spread of hours" pay required by New York law. Accordingly, Chou is liable to the plaintiffs for the unpaid wages to which they were entitled under the above provisions of the FLSA and the laws of New York. 29 U.S.C. § 216(b); N.Y. Labor Law § 663(1).

8. Under the FLSA, the statute of limitations applicable to claims for unpaid wages is two years, but is extended to three years if the violation is willful. 29 U.S.C. § 255(a). The employee bears the burden of proving willfulness, *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009), which requires a factual showing that the employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)). Conversely, an employer's conduct is not willful if the employer acts reasonably in determining its legal obligations. Nor is the conduct willful even if the employer acts unreasonably, so long as it is not reckless. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13 (1988); *accord Kaur v. Royal Arcadia Palace, Inc.*, No. 05-CV-4725, 2007 WL 4591250, at *14 (E.D.N.Y. Dec. 27, 2007). "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and

willful violations." *Gunawan v. Sake Sushi Rest.*, No. 09-CV-5018, 2012 WL 4369754, at *6 (E.D.N.Y. Sept. 24, 2012) (quoting *McLaughlin,* 486 U.S. at 132).

9. As the plaintiffs have offered no evidence that Chou either knew or showed reckless disregard for her obligations under the FLSA with respect to minimum and overtime wages, the statute of limitations for the plaintiffs' claims under the FLSA is limited to two years. Because this action was filed on June 2, 2011, the plaintiffs may recover unpaid minimum and overtime wages under the FLSA for the period from and after June 2, 2009. *See* 29 U.S.C. § 216(b).

10. The statute of limitations for claims brought under the NYLL is six years. N.Y. Lab. Law § 663(3). The plaintiffs may therefore recover unpaid minimum and overtime wages under New York state law for the period from and after June 2, 2005.

11. The question whether Chou is liable for unpaid minimum and overtime wages that accrued prior to July 1, 2008 when she became the plaintiffs' employer at Off Broadway turns on whether she is liable as a successor in interest to the prior owner and operator. As the only basis for liability for those unpaid wages arises under New York state law, the court looks to New York law to determine that issue.

12. It is not disputed that Chou and the corporate entity in which she held a 50% ownership interest, i.e., J P Elmhurst, Inc., purchased only the assets of the prior owner of Off Broadway. Generally speaking, under New York law "a corporation that purchases the assets of another corporation is not liable for the selling corporation's liabilities." *Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *10 (E.D.N.Y. Mar. 26, 2010)

(citing *New York v. Nat'l Serv. Indus., Inc.,* 460 F.3d 201, 209 (2d Cir. 2006)). There are, however, four exceptions where that general rule does not apply: (1) a buyer that assumes a seller's liability; (2) an asset purchase undertaken to defraud creditors; (3) a buyer that de facto merges with a seller; and (4) a buyer that is a mere continuation of a seller. *Vazquez,* 2010 WL 1223606 at *10 (citing *Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 45 (2d Cir. 2003)); *accord, Nat'l Serv. Indus., Inc.*, 460 F.3d at 209.

13. None of the four exceptions apply here. There is no evidence whatsoever that Chou or her corporation J P Elmhurst, Inc. assumed any of the liabilities of the previous owner of Off Broadway. Nor is there any evidence that the asset purchase was undertaken to defraud creditors or the plaintiffs. Indeed, the bill of sale contains an affirmative representation that the seller, Sunshine Broadway, Inc., is not indebted to anyone and has no creditors, and the claims made by the plaintiffs here were not made until two years after the sale occurred.

14. The remaining two exceptions – de facto merger and mere continuation – have been recognized by courts to be essentially indistinguishable from one another. *E.g., Douglas v. Stamco,* 363 F. App'x 100, 102 (2d Cir. 2010) ("the de facto merger and mere continuation exceptions . . . are often regarded as so similar as to be considered a single exception"); *Cargo Partner,* 352 F.3d at 45, n.3; *Lumbard v. Maglia, Inc.*, 621 F. Supp. 1529, 1535 (S.D.N.Y. 1985); *accord Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 499 (E.D.N.Y. 2011); *see also Nat'l Gypsum Co. v. Cont. Brands Corp.*, 895 F. Supp. 328, 336 (D. Mass. 1995). New York's four-part test for determining successor liability under these exceptions requires the

court to consider "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." *Nat'l Serv. Indus., Inc.*, 460 F.3d at 209 (citing *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45, 464 N.Y.S.2d 437, 451 N.E.2d 195 (1983)). Notwithstanding that there are four parts to the test, the first part – continuity of ownership – is essential for establishing successor liability under these exceptions, and successor liability therefore cannot be imposed in the absence of continuity of ownership. *Nat'l Serv. Indus., Inc.*, 460 F.3d at 211 ("the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership") (quoting *Cargo Partner,* 352 F.3d at 46).

15. The plaintiff has produced no evidence that the ownership of Off Broadway remained the same after the sale of the assets of the business on June 23, 2008. Indeed, the evidence is entirely to the contrary. As noted above, the prior owner of the business was Sunshine Broadway, Inc. and the prior owner of the land on which the business was located was High Up Property, Inc. There is no evidence that either Chou or Peter Wang, her partner in J P Elmhurst, Inc., had any ownership interest in either of those two seller corporations. Nor is there any evidence that either Chou or Wang played any role in operating the business prior to June 23, 2008. Thus, in the absence of any proof of continuity of ownership by Chou in Off Broadway, she cannot be held responsible for any

obligations of Off Broadway that accrued prior to June 23, 2008 on a theory of successor liability.

16. Even if continuity of ownership were not an absolute prerequisite to successor liability under the de facto merger/mere continuation exception, consideration of the other three parts of the four-part test leads to the same result. There is no evidence concerning the selling corporation, Sunshine Broadway, Inc., after the sale, i.e., whether it continued in business or whether it dissolved. It is clear from the terms of the sale, as articulated in the bill of sale, that J P Elmhurst was not assuming any of the liabilities of Sunshine Broadway. Finally, although there was continuity in personnel and the operation of the business, overall management of the business changed completely, with Lee leaving and Chou taking over.

17. Under the FLSA, once liability is established the employee is entitled to recover all unpaid minimum and overtime wages, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The employer may escape liability for liquidated damages, however, if it can demonstrate that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.,* 537 F.3d 132, 150 (2d Cir. 2008). Chou has offered no evidence to meet this good faith requirement, and is therefore liable to pay liquidated damages under the FLSA.

18. Under New York law, an employee is similarly entitled to recover liquidated damages related to any unpaid wages. Prior to November 29, 2009, however, the employee had to demonstrate that the employer's failure to pay required wages was willful. The

standard for establishing willfulness under the NYLL is essentially indistinguishable from that applicable under the FLSA with respect to the statute of limitations. *McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (citing *Kuebel*, 643 F.3d at 366). As there has been no demonstration of willfulness on the part of Chou, the plaintiffs are not entitled to recover liquidated damages under the NYLL for the time prior to November 29, 2009.

19. The NYLL was amended such that a showing of willfulness is no longer a prerequisite to recovery of liquidated damages after November 29, 2009. Rather, as under the FLSA, an employee is now entitled to recover liquidated damages under the NYLL unless the employer can establish a good faith basis for having failed to pay the required wages. N.Y. Lab. Law § 198(1-a). Nevertheless, the plaintiffs here are not entitled to recover liquidated damages under the NYLL for unpaid minimum and overtime wages accruing after November 29, 2009. Because the plaintiffs are entitled to recover liquidated damages under the FLSA dating back to June 2, 2009, an award of liquidated damages under the NYLL would be cumulative of the award under the FLSA. There is a split of authority in this Circuit concerning cumulative recovery of liquidated damages under both the FLSA and NYLL, *see Gunawan v. Sake Sushi Rest.*, No. 09-CV-5018, 2012 WL 4369754, at *9 (E.D.N.Y. Sept. 24, 2012) (comparing *Greathouse v. JHS Sec., Inc.*, No. 11 Civ. 7845, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) and *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011)); I continue to adhere to the view that a

cumulative recovery of liquidated damages under both statutes is unwarranted. *See Jin v. Pac. Buffet House, Inc.*, CV-06-579 (VVP), 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009).

20. There is, however, one respect in which an award of liquidated damages under the NYLL is not cumulative of the plaintiffs' liquidated damages award under the FLSA. Since the FLSA provides no award similar to the "spread of hours" award available under NYLL, the plaintiffs are entitled to recover liquidated damages equal to 100% of any recovery they obtain for "spread of hours" pay.

21. To recap, the defendant Chou is liable to the plaintiffs for unpaid wages and liquidated damages as follows:

    a. under the FLSA, all unpaid minimum and overtime wages that accrued during the period from June 2, 2009 to the date of the filing of this action, plus an equal amount as liquidated damages;

    b. under the NYLL, all unpaid minimum and overtime wages that accrued during the period from July 1, 2008 to June 2, 2009;

    c. under the NYLL, all unpaid "spread of hours" pay that accrued during the period from July 1, 2008 to the date of the filing of this action, plus an additional amount of 25% of all unpaid "spread of hours" pay that accrued during the period from November 29, 2009 to April 9, 2011, and a further additional amount of 100% of all unpaid "spread of hours" pay that accrued during the period from April 9, 2011 until the filing of this action.

## DAMAGES

Within fourteen days, the plaintiffs are directed to file a spreadsheet reflecting their calculations and conclusions concerning the damages they assert should be awarded to each of them in accordance with the foregoing findings of fact and conclusions of law. Within seven days thereafter, the defendant Chou may file a response challenging those calculations and conclusions.

SO ORDERED:

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated: Brooklyn, New York
April 9, 2013